VETTERLI ET AL. v. UNITED STATES DISTRICT
COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA ET AL.

No. A–830 (77–1395). Decided April 10, 1978

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicants, members of the Pasadena City Board of Education, seek a stay of an order issued by the United States District Court for the Central District of California, pending disposition of a motion for leave to file a petition for a writ of mandamus and of a petition for writ of mandamus.[1] They claim that portions of the District Court's order violate the decision and judgment of this Court in *Pasadena City Board of Education* v. *Spangler*, 427 U. S. 424 (1976), and that the order, unless stayed, will subject them to the irreparable harm of having to engage in burdensome and disruptive activities necessary to comply with the District Court's order. Since my reading of the record indicates that the order does not conflict with our decision in *Spangler, supra,* I decline to issue the stay.

---

[1] Three separate orders are actually involved, but all are substantially identical.

*Spangler* arose out of a suit commenced in 1968 by high school students and their parents, alleging that various school officials had unconstitutionally segregated the public schools in Pasadena. In 1970, after trial, the District Court, holding that the defendants had violated the Fourteenth Amendment, ordered them to submit a plan for desegregation which would provide that beginning with the 1970–1971 school year there would be no school "with a majority of any minority students." The defendants complied. In 1974, however, applicants, successors in office to the previous defendants, filed a motion with the District Court seeking to modify the 1970 order by eliminating the "no majority" requirement. The District Court denied the motion, ruling that the "no majority" requirement was an inflexible one to be applied anew each school year even though subsequent changes in the racial mix in the schools were caused by factors for which the defendants might not be considered responsible. The Court of Appeals affirmed that ruling, but we reversed, concluding that the District Court had exceeded its authority in enforcing the "no majority" provision so as to require annual readjustment of attendance zones.

Upon remand to the District Court, a hearing was scheduled on applicants' motion for dissolution of the 1970 injunction.[2] Applicants represented that there was no plan at that time to make any changes in the method of making student assignments. Shortly thereafter, on July 1, 1977, the District Court deleted the "no majority" provision from the injunction.[3] The hearing was completed and the matter submitted

---

[2] The cause was initially remanded to the Court of Appeals which in turn merely remanded it to the District Court, noting that "all determinations as to modifications required under [*Spangler*] . . . should initially be made by the district court." *Spangler* v. *Pasadena City Board of Education,* 549 F. 2d 733 (CA9 1977).

[3] The District Court entered the following order:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED: The no majority of any minority provision contained in this Court's judgment of

to the District Court for resolution. By late January 1978, when no further action had been taken by the District Court, however, applicants withdrew their representation that no changes would be made in the method of student assignments and on February 28, 1978, the District Court entered the following oral order:

> "[P]ending decision of this Court on the submitted matters before the Court or until further order of the Court, . . . each of you are enjoined from making any changes in the method of student assignments in the Pasadena Unified School District that was in effect on October 21, 1977." [4]

The applicants, concerned that the District Court did not include in the order anything expressly relating to the "no majority" provision, sought a clarification of the order later that same day. Applicants' counsel stated:

> "We have concluded from that omission, your Honor, that the purport of the order which was issued or the injunction which was issued this morning to those defendants was that they are indeed enjoined to take measures for the purpose of insuring that no school in the district has a majority of any minority students."

The judge replied:

> "That is right, Mr. McDonough. There is to be no

January 23, 1970 is hereby stricken from the Pasadena Plan as required by the Supreme Court's opinion of June 28, 1976."

[4] Prior to issuance of the order the District Court had entertained proposed orders to be entered against the applicants pending disposition of the case. The United States and the student plaintiffs-intervenors submitted proposed written orders which expressly reaffirmed the District Court's order striking the "no majority" requirement. Applicants argued that no further order was justified, but that if an order were made it should specifically include the provision that "[n]othing in this order requires defendants to take any measures for the purpose of insuring that no school in the Pasadena Unified School District has a majority of any minority students."

change in the student assignment system that was in force on October 21st, 1977."

Applicants, relying totally on the judge's comment that "[t]hat is right," now contend that the District Court has reimposed the "no majority" requirement contrary to the dictates of our decision in *Spangler, supra.* If that were true, a writ of mandamus might properly issue to execute the Court's judgment. See *Vendo Co.* v. *Lektro-Vend Corp.,* 434 U. S. 425 (1978). But I do not think the judge's statements during the colloquy can be read as having that effect, and I accordingly deny the application for a stay.

The District Court took steps which unequivocally lifted the offending part of the 1970 order. See n. 3, *supra.* That was done on July 1, 1977. And there is nothing in the record before me to indicate that after that date the "no majority" requirement was part of the method of student assignments. On February 28 the District Court ordered applicants to refrain from making any changes in the method of student assignments in effect as of October 21, 1977, a date well after the July 1 date on which the "no majority" requirement was eliminated from the 1970 injunction. On its face this order certainly cannot be read as reimposing the "no majority" requirement.

Even as a matter of language, one would have to strain to read the colloquy occurring later that same day as indicating that the judge thought his order had reimposed the "no majority" provision. Busy judges and busy lawyers do not invariably speak with mathematical precision in such colloquies. The obligations imposed by an injunction must be clear and well defined. A judge should not be thought, by a cryptic and offhanded remark in a later proceeding, to have reimposed an obligation which he specifically and unequivocally eliminated just a few months before pursuant to the direction of this Court and to which he made absolutely no reference in the original order. I will not indulge the presumption that

the District Court acted contrary to these well-settled principles in the absence of a clear indication that it in fact did.

Since the District Court's order of February 28 does not conflict with our decision in *Spangler* by placing applicants under any obligation to annually reassign students so that there is no school "with a majority of any minority students," I do not think five Members of this Court will vote to grant a writ of mandamus. Thus, I see no reason to issue the requested stay.

Of course, if at some future time the District Court actually reimposes the "no majority" requirement in contravention of our decision in *Spangler* or otherwise requires applicants to comply with such a provision, applicants may again petition this Court or the Court of Appeals for relief. At this time such relief appears unwarranted, however, because applicants do not appear to be under any such obligation.